A. D. MOON, Appellant v. OSCAR A. BROWN, Respondent.

Kansas City Court of Appeals, June 30, 1913.

1. **MECHANIC'S LIENS: Identification of Lumber as Having Been Used in Building.** A contractor had the contract of erecting two houses on adjoining lots, belonging to different owners. These houses were not alike, one costing nearly $1000 more than the other. Lumber for both was purchased

of plaintiff and used indiscriminately on the buildings. *Held,* that the finding of the trial court that the lumber has not been sufficiently identified is approved, even though the contractor testifies that by reason of his expert knowledge of the subject he can tell the amount and character of lumber needed in the house. The case is not like that where all of the material is deposited on the lot in question and none is purchased or used elsewhere and all was used.

2. ————: ————: **Question for Jury or for Court Sitting as a Jury.** Even if the mechanic's lien law permitted such a loose method of keeping a lien account, still as the correctness of the account depends on the weight to be given the contractor's testimony and that is a question for the triers or trier, and it has been found adversely to plaintiff, the appellate court will not interfere.

3. ————: ————: **Settlement of Materialman With Contractor: Estoppel.** The giving of a receipt in full for materials by the materialman to the contractor, which receipt the latter uses to obtain money from the owner will estop the former from afterwards claiming a lien against the owner, at least to the extent of the amount thus paid out by the owner.

Appeal from Jackson Circuit Court—*Hon Jas. H. Slover,* Judge.

AFFIRMED.

*Ellis, Cook & Barnett* for appellant.

(1) In the absence of contradictory proof a materialman, in order to maintain a mechanic's lien, is not obliged to show, except in a general way, that his material was used in the house. Lumber Co. v. Harris, 107 Mo. App. 151; Lumber Co. v. Greffet, 154 Mo. App. 39; Rice & Floyd v. Hodge Brothers, 26 Kan. 170. (2) To make out an estoppel it must among other things be shown by the party setting up the estoppel that he has suffered injury by the conduct of the party to be estopped. The burden of proving all the elements of an estoppel rests upon the party claiming the benefit of the rule. Petring v. Christler, 90 Mo. 658; 2 Am. & Eng. Ency. of Law, 424; 16 Cyc. 811, 812. (3)

An essential element of estoppel is injury to the estoppel asserter. Newman v. Hook, 37 Mo. 213; Fairbanks v. DeLissa, 36 Mo. App. 721; Ewart on Estoppel, p. 146; Bigelow on Estoppel, p. 644; 2 Pomeroy's Equity Jurisprudence, (3 Ed), pars. 805 and 812; 16 Cyc. 744.   (4)   Where the injury, if any, is measurable in dollars and cents the estoppel, if any, can only operate to the extent of the injury. 16 Cyc. 557; Atkins & Briscoe, v. Payne & Wetter, 190 Pa. St. 5.

*W. F. Zumbrunn* for respondent.

(1)   In this case there is no such thing as making a prima facie case, in that the proof in the cause at bar establishes a different view in law, viz.: Plaintiff's testimony showed that as to the lumber claimed and alleged to have gone into the Brown house, a large percentage thereof was used in the Thompson house, and the court sitting as a jury, hearing all the evidence, observing the demeanor of the witnesses on the stand, held against the plaintiff on the proof.   The doctrine that a case prima facie made entitles a party to judgment in the absence of a defensive showing, never obtains in those cases where plaintiff's own evidence rebuts and overthrows the presumption.   (2) The intermingling and placing of lumber by a contractor taken from a common pile and placed into several houses, precludes the materialman from obtaining the benefit of the mechanic's lien law; to state it concisely, the materialman must see that the party obtaining the credit must use the material where so intended.   Fitzpatrick v. Thomas, 61 Mo. 516; Deardorff v. Everhartt, 74 Mo. 37; Lumber Co. v. Cravens, 54 Mo. App. 218; Lumber Co. v. Johnson, 88 Mo. App. 404-407; Simmons v. Carrier, 60 Mo. 581; Kansas City v. Youmans, 213 Mo. 179.   (3)   Plaintiff is estopped from claiming the benefit of the lien statute by force of the fact that he executed a receipt in full

to the contractor for all lumber and material, which receipt was delivered to respondent Brown, who, on faith thereof, paid a like amount of money to the contractor, who was at the time in default, and but for appellant's receipt, would not have paid the money. Brick Co. v. Sadring, 68 Mo, App. 15; Lumber Co. v. Park Association, 64 Mo. App. 377.

TRIMBLE, J.—Appellant has sued to establish, a lien for lumber sold for, and alleged to have been used in, the erection of respondent's house. The case was tried by the court a jury being waived. The court rendered a personal judgment against the contractors for the amount claimed, but refused appellant a lien.

Respondent Brown was the owner of the lot at No. 15, East Concord avenue, Kansas City, Missouri, and a Mr. Thompson owned the lot adjoining known as No. 11, East Concord avenue. For convenience they will hereinafter be respectively referred to as the Brown lot and the Thompson lot. These owners were each having a building, presumably a dwelling house, erected on their respective lots, and the same firm of contractors, Shahane & Johnson, had the job of constructing them. They were built at the same time. Before their completion the constructing firm dissolved, Shahane continuing the work of finishing the houses.

Appellant sold the major portion of the frame lumber to the contractors for use in both buildings. There was some material, not a great deal, purchased elsewhere. It was ordered by Shahane. At first, the lumber ordered for the Brown house was delivered to and piled on that lot and the lumber for the Thompson house piled on its lot, but afterward, owing to an excavation or ditch of some kind between the two properties, the lumber thereafter bought was all piled on the Thompson lot. Whether it was there kept

in separate piles is not clearly shown, though perhaps it was. The contractor could not say whether the sheeting was or not, and certainly the shingles, after they were stained were not kept separate but were deposited on the Thompson lot. Whether the lumber was piled separately or not makes little difference, since if it was, the lumber was used from the piles interchangeably on both houses. Whenever the workmen needed certain lumber for the Thompson house and it, for any reason could not be obtained from the Thompson lumber, it was secured from the Brown lumber and vice versa. The two houses were not the same in size, character or design, except they were both stucco on the outside. The dimension lumber, the contractor testified, was practically the same for both houses. The contract price of the Brown house was $2900 and that of the Thompson house $3850.

With reference to appellant's right to a lien the court found that plaintiff failed to identify the lumber that went into the Brown house and failed to show that it actually went into the Brown house; that prior to the institution of the suit plaintiff executed and delivered to Shahane a receipt in full for all material claimed to have been furnished for the Brown house, which receipt Shahane presented to Brown as showing that the material had been paid for, and thereupon Brown paid Shahane the amount thereof; that at the time of so doing Shahane was in default on his contract with Brown so that, by paying Shahane the amount of said receipt, Brown has suffered a loss; for all of which reasons plaintiff was adjudged not to be entitled to a lien.

Appellant claims that, as to the first ground mentioned, he made a prima facie showing that his lumber went into the Brown building, and, as there was no evidence on Brown's part to the contrary, he should not be denied a lien on that ground. As to the second ground, he claims that there is no evidence to

show that Brown, by paying the amount of the receipt, lost or will lose anything thereby and therefore appellant is not estopped. But that if appellant is estopped, he is so only to the extent of the amount Brown paid on said receipt, and, as Brown only paid $362 on said receipt and appellant's lumber bill is for $555.51, he is still entitled to a lien for the difference. He, therefore, asks this court to review the evidence and reverse and remand the case with directions to enforce a lien for either the full or the lesser amount according to whether an estoppel exists or not.

The trouble with this request is that it overlooks a number of difficulties under which appellant's side of the case labors. In the first place, the trial court has found that the lumber sued for has not been shown to have been used in the Brown building. If there is evidence to support this finding can we weigh the testimony and come to a different conclusion? In this connection it should be stated that appellant contends that it was clearly shown that a certain amount of dimension and frame lumber went into the framework or skeleton of the Brown house, that an equal amount went into the Thompson house, that none was used elsewhere, and that the amount of such lumber called for in this bill corresponds with the amount necessary for, and used in, the erection of the Brown house, and, therefore, in the absence of a showing to the contrary, this was a sufficient showing that that portion of the lumber in the bill sued for was used in the Brown house. But, even if the facts in this contention be found to exist, still, there is no showing as to just how much of such lumber was thus, prima facie, shown to have gone into said building. Therefore, how can it be determined what amount is due for which a lien can be claimed? And if appellant is estopped, by reason of the receipt he gave, from claiming a lien as to $362 of the account, is there anything

proving that he has shown himself entitled to a lien for any sum beyond that amount had no estoppel existed? Certainly appellant cannot claim there was a prima facie showing as to the shingles since no account was kept of the amount used on each house nor of any of the other material used for that matter, except perhaps the dimension lumber. But the case need not be rested on this apparent concession made by us for argument's sake. It was made to show that the trial court's judgment does not have to rest solely upon one or the other of the reasons given by it but may be founded in part on one and in part on the other, thus resting on the two combined. But, without this concession, the trial court found that appellant did not show that the lumber was used in the erection of the Brown house. This finding involves not only a conclusion drawn from the evidence as given, conceding it to be true, but also the trial court's estimate of the weight and value of the evidence offered in appellant's behalf. As to the certainty and convincing quality of the evidence, conceding its truthfulness, in relation to whether the lumber actually went into the house or not, a few quotations from that evidence may suffice. Shahane, the contractor, testified:

"Those (referring to the items of appellant's account) are probably the items which were purchased by me from Mr. Moon for this job for Mr. Brown. According to my best judgment from looking that over at this time, those are the items. I suppose that lumber went into the Brown house. Of course I never saw any great portion of it used. But we were not buying material from any one else, at least I was not, and I presume it was used. I went over the bills with Mr. Moon in his office, and I knew from past knowledge and practical experience what could be charged to each job and I used my knowledge along those lines. Now whether any of that lumber delivered for the Brown house was used in any other

house, I couldn't tell you, I couldn't say as to that. I don't know what care was used to keep the lumber separate. It is probably true that at times men at work on the Thompson lot took lumber from the Brown lot and put it in the Thompson house. I don't think it was a practice to any great extent. Q. Can you tell, Mr. Witness, from an examination of this statement I now hand you just how—which is a part of the mechanic's lien statement—whether or not the items mentioned in that statement are the items of the actual lumber and pieces of material that went into the Brown job? A. I couldn't right down to the minute details now. Q. In checking this matter over with Mr. Moon you O. K.'d this statement on what you assumed was the lumber that was placed in the Brown job, predicated upon an examination of the plans? A. Yes, sir. Q. So you have no way, Mr. Witness, of telling positively that the lumber that was delivered on the Brown job went into the Brown job. A. No, not right down to say all of it, no. Q. And you couldn't tell how much of it was actually used, could you? A. All I would go by would be my knowledge of what it would take to build the house.

"When any of the men wanted a stick of lumber for either house I presume they would go to the nearest pile. I saw them do that frequently. I know how much lumber it takes to build a house like the Brown house and also the number of shingles. As to the shingles they were all just alike. There were so many went on each house. I wouldn't have any way of saying whether these were the shingles that went on the Thompson house or whether the Thompson shingles went on the Brown house. I don't know whether they were delivered on the Thompson job, but I know they were all stained, we had a place fixed up to stain them, and it was all done on the back of the Thompson lot. After they were stained they

were piled out for drying on the Thompson lot. We would go and get a quantity that we wanted to put on the Brown job. We kept no track of the number that went on the Brown house. We know no number that were taken from the Thompson job and put on the Brown house—no more than my knowledge of how many it takes to cover the Brown house. Q. That would be guess work? A. No, sir, I know how many it takes. Q. Do you know it to be absolutely accurate? A. It might vary a thousand or fifteen hundred shingles. Q. So having used this lumber on both jobs interchangeably you couldn't tell—you couldn't state what lumber was used on either house? A. All I know of my own knowledge is there was lumber piled up for both houses—that we got enough to build them both. Q. And you used it wherever you wanted it? A. I don't know of my own knowledge how the men used it. Q. You admit, do you, Mr. Witness, that so far as this bill is concerned and the items set forth there, it is strictly an estimate upon your part of what you say went into the Brown job as the result of your figuring? A. Just the same as if I was going to build another house over again. Q. And you don't identify and don't pretend to identify the actual material that went into the job? A. I have no way of doing that."

Now it was for the trial court to say whether or not the assertion of this witness that he could tell, by looking at the Brown house, how much of the lumber went into its construction and whether he was correct or not in saying that practically all of the items were for rough or dimension lumber and were practically identical with that class of lumber used in the Thompson house. In addition to this, it was shown that this witness, on October 22, 1909, gave appellant a check for $362 and received from him a receipt therefor "*in full* for lumber for No. 15 Concord Ave. K. C.," and that this was in full for appel-

lant's lumber bill rendered for the Brown house at that time; but afterwards, when it was discovered there was going to be trouble over the matter, the witness went to appellant and checked over his account making it $560 instead of $362 although no lumber had been bought of appellant after the receipt was given. It is true the witness gave an explanation of how this came about, but it amounted to no more than that appellant did not have enough lumber in the Brown bill and the witness used his expert knowledge in determining what should have been in the account. Whether this explanation explained anything was also for the court to pass upon. It can be seen from the foregoing that there is sufficient evidence to support the trial court's finding that the lumber used in the Brown house had not been sufficiently identified. We do not mean to be understood as holding that a materialman, in order to obtain a lien, must have an eyewitness to testify that each particular stick actually went into the house before he can have a lien. Of course in a case where the lumber is delivered to a certain premises and, so far as known, none is used elsewhere, and all that was purchased was used, this would entitle him to a lien. But the case here is somewhat different. It is not like the case of Rice v. Hodge, 26 Kan. 164, l. c. 170, where there was "no testimony tending to raise even a suspicion that the materials therefor were elsewhere obtained or that those contracted for were not used therein." In that case the lien man was held to have made out a prima facie case. But the court on the same page said:

"Of course, cases may arise where more stringent proof is required, as, if for any reason there should be a fair and wellgrounded suspicion that the contractor had used the materials purchased for some other building, or for some other purpose. If for instance it should appear that more materials were furnished than were in fact used in the building, then it might

be fair that the sellers should be able to show specifically that the materials they sold were in fact those which entered into the building, so that the owner should be charged with the cost only of that of which he actually received the benefit."

Again, the fact that no countervailing testimony was offered by respondent does not avail to make appellant's evidence present a prima facie case. Because, countervailing testimony is not necessary to destroy a prima facie case if the testimony offered is deemed by the trier of fact inherently weak, or contains contradictions or inconsistencies. In such case there is no prima facie case made. It was shown that at the time the Brown bill was claimed to be only $362, the receipt *in full* was given for the material used therein. Appellant had reason to know that the contractor's check in payment of said bill might not be good since he was requested not to present it for a few days. He also knew that the receipt would be used to obtain a payment to the contractor from Brown. And it was not until after Brown had paid the contractor $365 upon the representation, made by means of the receipt, that the bill for material had been paid in full, and also not until after the contractor's check to appellant was found to be worthless, that the account against Brown's house was gone over again and increased from $365 to $555.51. All the lumber last bought and used was piled on the Thompson lot. That house cost nearly a $1000 more than the Brown house. The lumber was used interchangeably. Under all these perplexing and peculiar circumstances who could say with any degree of certainty how much of appellant's bill against Brown was actually used in the latter's house? And although there may be nothing suspicious in the increase of the Brown bill, yet this is a question for the trial court to pass on, since it heard the witnesses and saw them face to face when the explanation was given.

We do not understand appellant's contention that respondent is not shown to have changed his position for the worse when it appears that, acting on the assurance of appellant's receipt that the contractor had paid in full the lumber bill on his house, he paid $365 to the contractor. The court found that he suffered a loss and inasmuch as it can be seen from the evidence that the contractor was involved and hard pressed for money, and that not only are the bills on the Brown house unpaid but those on the Thompson house as well. In addition to this, Brown testified that, at the time the receipt was presented to him, the outstanding bills exceeded the contract price quite considerably. It is true Brown afterwards testified that he had not overpaid the contractor, but he would be overpaying him if required to pay appellant this amount on his bill after having once paid to the contractor. Since clearly he does not owe him anything now, appellant by his receipt has beyond doubt estopped himself from claiming a lien at least to the extent of $362. [Cote Brick Co. v. Sadring, 68 Mo. App. 15; Norton Lumber Co. v. Driving Park Assn., 64 Mo. App. 377.]

In view of the foregoing we see no ground upon which we are justified in disturbing the trial court's findings and judgment. The latter must therefore be affirmed. It is so ordered. All concur.