MISSOURI INTERSTATE PAPER COMPANY, RESPONDENT, v. WALTER J. GRESHAM, APPELLANT.—116 S. W. (2d) 228.

Kansas City Court of Appeals. May 2, 1938.

*Levy & Kirschner* for respondent.

*Walter J. Gresham pro se.*

SHAIN, P. J.—This is a suit upon a note. The suit was filed June 25, 1936. The note sued upon is of date November 20, 1935, and is for $146.41, due six months after date with interest from date at rate of seven per cent, with interest compounded if not paid when due. The designated payee in said note is the plaintiff herein, and note is signed by the defendant herein. The note in issue provides for ten per cent additional on amount due as attorney fees, if placed with attorney for collection.

The plaintiff's petition is in due form, alleging execution by the defendant, also pleading condition as to attorney fees. The plaintiff alleges payment by defendant on said note as follows: June 29, 1926,

ten dollars, and June 21, 1927, five dollars, and alleges a balance due upon principal of $131.41. Plaintiff alleges interest due and unpaid in the sum of $97.22, and alleges plaintiff to be entitled to penalty in the sum of $13.42. The plaintiff asks judgment for principal, interest and penalty in the sum of $241.77.

The defendant makes answer as follows:

"Comes now defendant and for answer to plaintiff's petition denies each and every allegation therein contained, and denies that he executed the instrument set forth in the petition. Further answering, defendant says that plaintiff's claim, if any it ever had, is barred by Sections 861 and 862, Revised Statutes of Missouri for 1929.

"Walter J. Gresham."

Defendant's answer is verified as follows:
"State of Missouri, Platte County, ss.

"Walter J. Gresham, being duly sworn, states that he is the above named defendant and knows the contents of the foregoing answer, and that the statements contained therein are true, and affiant denies that he executed the instrument set forth in plaintiff's petition.

"Walter J. Gresham.

"Subscribed and sworn to before me this 7th day of September, 1936.

"E. R. Clarke, Circuit Clerk."

Trial was had before jury, resulting in verdict for plaintiff in the sum of $131.41. Judgment was had and entered in accordance with the verdict. From said judgment defendant duly appealed.

### OPINION.

We will continue to refer to respondent as plaintiff and to appellant as defendant, to conform to trial court.

The most vital issue presented for review is urged in defendant's assignment of error in refusal of instruction No. 1. Instruction No. 1 is a peremptory instruction in the nature of a demurrer to the evidence.

As the verdict was for the plaintiff, if there appears of record substantial evidence supporting plaintiff's cause of action, then this court must rule against defendant on his point No. 1. The question of the tolling of the statute of limitations is directly involved.

The Missouri rule applicable to the issue as presented in this case is well expressed in a quotation from Campbell v. Baldwin, 130 Mass. 199, found in Regan v. Williams, 185 Mo. 618, l. c. 632, of the opinion wherein the Missouri Supreme Court quotes with approval from Campbell v. Baldwin, supra, as follows:

" 'The ground upon which a part payment is held to take a case out of the statute is, that such payment is a voluntary admission by the debtor that the debt is then due, which raises a new promise by

implication to pay it or the balance. To have this effect, it must be such an acknowledgment as reasonably leads to the inference that the debtor intended to renew his promise of payment. [Roscoe v. Hale, 7 Gray 274; Stoddard v. Doane, 7 Gray 387; Richardson v. Thomas, 13 Gray 381.]' "

In the Regan v. Williams case, l. c. 631, there is also quoted with approval from Wood on Limitations (3 Ed.), sec. 99, as follows: "Part payment does not take a debt out of the statute unless made under such circumstances as to warrant the inference that the debtor thereby recognized the debt and signified his willingness to pay it." There is a general rule to the effect that a part payment on an ascertained debt is an admission that the whole is then due. However, the authorities cited above are clearly to the effect that there are exceptions to this general rule and in the case at bar it must be determined from the evidence as to whether the general rule or the exception to the general rule applies.

In Bender v. Markle, 37 Mo. App. 234, this court said, l. c. 247-248, as follows:

"There is no question but that part payment of a note takes it out of the statute, that is, the limitation will only begin to run from the day of payment. This is true, if the payment made by the party sought to be held, whether it be made before or after the note is barred. [Shannon v. Austin, 67 Mo. 485.] From the mere fact of payment of a part of the debt, nothing more appearing, the law presumes an acknowledgment or new promise."

In the above case, the credit claimed as tolling the statute was paid by the trustee of a deed of trust from the proceeds of a foreclosure sale. This court held that said payment tolled the statute. In a later case, before the St. Louis Court of Appeals, that court held that such a payment did not toll the statute. Owing to conflict, Regan v. Williams was certified to the Supreme Court and that court sustained the opinion of the St. Louis Court of Appeals on the theory that at the time of the sale the plaintiff had no interest in the proprty. In other words, that it was not the plaintiff's money and was applied by law to the extinguishment of the debt, *pro tanto*.

We conclude that the law as quoted from Regan v. Williams, supra, is the recognized law in this State.

There was but one witness called upon to testify in the case at bar. The plaintiff called to the stand R. E. McJilton, the secretary and credit manager of plaintiff. This witness testified that all the transactions involved herein were with him, and that no one else in the company had any connection with this transaction so far as arrangements with defendant were concerned.

The defendant placed no witness on the stand, and excuses his failure to take the stand and testify upon the contention that the

plaintiff's testimony fully established his defense by admissions made by plaintiff's witness while on the witness stand. The defendant urges in this case the rule that where plaintiff's admissions prove the fact that defendant is required to prove in order to establish his defense, testimony on part of defendant is not required and that no unfavorable inference arises from defendant's failure to testify. [Castens v. K. & L. of H., 190 Mo. App. 57, 175 S. W. 264; Buhl v. Miles, 6 S. W. (2d) 661.]

The defendant further urges that a *prima facie* case cannot be made by the evidence of plaintiff, for the reason that same is contradictory and inconsistent, and presents facts which rebut the inference it attempts to raise. The above principle, we conclude, is supported by the opinion in Moon v. Brown, 172 Mo. App. 516, 158 S. W. 79. To the same purport, see Oglesby v. Mo. Pac. Ry. Co., 177 Mo. 272.

In Brosius v. Lead & Zinc Co., 149 Mo. App. 182, l. c. 187, citing the above cases as authority in the opinion it is stated as follows:

"If the testimony of a witness contains antagonistic and irreconcilable statements of fact in which one class tends to sustain the allegations of the petition and the other to disprove them, no one would contend for a moment that the case was for the determination of a jury. Until a witness can determine for himself what he saw or did not see, a jury is not warranted in making a determination for him. Under such circumstances the court should dispose of a case as if the witness had not spoken, as if plaintiff had offered no proof upon that averment of his petition."

With the law as defined above, we must determine from the testimony of plaintiff's secretary, treasurer and credit manager, as to whether admissions made established the defense. In so doing, we must consider the question as to whether or not such testimony rebuts the inference that the payments made were of such voluntary nature as to toll the statute and must also determine as to whether or not such testimony contains such antagonistic statements as gives application to the law as laid down in Brosius v. Lead & Zinc Co., *supra*.

As going direct to the issue, we quote evidence elicited from witness McJilton on cross-examination. The following questions and answers are shown:

"Q. Mr. McJilton, there was some controversy between us, and has been for a long time about this note, isn't there? A. No controversy.

"Q. What do you mean? A. What do you mean by controversy?

"Q. Haven't I, for a long time, been insisting that this was not a valid and enforceable note? A. No, sir, not to my knowledge.

"Q. You never heard of that? A. No, sir, I never."

Thereafter the following is shown:

"Q. Mr. McJilton, do you say that I did not contend to you that

this note was not enforceable? A. You have contended that it was not enforceable.

"Q. Yes. A. But you have never said that it was an invalid obligation.

"Q. There was a controversy between us then, and I told you the note could not be enforced, didn't I? A. You said we could not collect the note—"

Thereafter the following is shown:

"Q. Didn't I tell you the only obligation I recognized was a moral obligation on account of what you sold the Lexington News? A. I don't say you stated a moral obligation, but you did recognize you were indebted to us.

"Q. On the account? A. By the letters here—

"Q. Didn't I tell you the only obligation I recognized was on the account to the Lexington News, and that I did not recognize the note, and you could not enforce it? A. I think you said that probably, but the letters are contrary to that."

Thereafter the following is shown:

"Q. You knew that I was saying to you that the only obligation I had was on that account, didn't you? A. We had no account, Mr. Gresham, as you are well aware of. We had no account other than your note-account, which we carried on a ledger form, which is an account.

"Q. When you say account, Mr. McJilton, you mean a different thing than you say you hold a man's note, don't you? A. No, I do not, because we generally start in as a note-account, or an open account.

"Q. When you sue a man, you sue him on a note or an account, don't you? A. Open account, yes, sir.

"Q. And that means two different things, doesn't it? A. But bills receivable and accounts receivable are just the same.

"Q. Now, this letter, is that the only instruction you had as to the application of that payment? A. I thought that was sufficient.

"Q. Yes, and upon that, a letter, telling you to apply it upon the account, you took it and applied it on the note, didn't you? A. On the note-account, yes.

"Q. Well, I did not tell you to apply it on the note-account, did I? Turn back to June, 1926, what did I tell you in that one—that was before we got into controversy, wasn't it? A. *No, it has been in controversy ever since the note was given.*" (Italics ours.)

Thereafter the following is shown:

"Q. I did not call to see you in between those times? A. I expect you did, you had been in several times.

"Q. I talked over the terms and conditions that this was to be given under, didn't I? A. No, there was no discussion of terms.

"Q. That is where the argument started, you claimed there were not any such arrangements, and I claimed there were? A. No, Mr. Gresham, here is considerable more correspondence.

"Q. Well, I say, you claimed there were not, and I claimed there were, isn't that correct? A. I contended that the note spoke for itself.

"Q. Wasn't I contending that you had not done what you promised to do? A. I think you have; I don't know what you have reference to."

Thereafter the following is shown:

"Q. You say I have not denied liability on the note? A. That is right.

"Q. Haven't I told you repeatedly, and written you, that you could not collect it by suit, and that I was ready to come into a suit any time you wanted to sue?

Mr. Levy: I object to you answering that, for the reason that the letters would be the best evidence.

"Q. Haven't I told you that orally? A. You have said in conversation that we could not collect it if we went to court?"

Under our law an indorsement made on a note by the holder without the privity of the maker is not of itself sufficient to toll the statute. [Phillips v. Mahan, 52 Mo. 197.]

In the first three answers made by plaintiff's witness on cross-examination he denies that any controversy ever existed, and that he had ever heard of defendant insisting that the note in question was not a valid and enforceable note.

In the fourth answer made by the witness he directly admits that defendant had contended that the note was not enforcible. Directly thereafter the witness admitted that defendant said, "We could not collect the note." The witness thereafter admitted that defendant had told him that the only obligation he recognized was on the account to the Lexington News, and that he did not recognize the note, and that plaintiff could not enforce it. Further on in his testimony, the witness admits that there had been a controversy ever since the note was given. The witness further admitted that defendant had said in conversation, that we could not collect if we went into court.

We conclude the law to be that where a note had indorsements that, unaccompanied by conditions or circumstances which repeal or rebut the presumption of admission of present and existing obligation on the note, brings the note within the statute, then and in such event, the Statute of Limitations has no application. However, if there be facts and circumstances in evidence which repeal or rebut the presumption of an unqualified and direct admission of existing obligation on the note at the time when said credit is dated, then evidence *aliunde* the indorsement itself is required to make a *prima facie* case for

a jury. We conclude that the admissions made in the testimony of plaintiff's witness are such that tend to repeal or rebut the presumption that the indorsements in question were made under circumstances that amount to an acknowledgment on the part of defendant of a present obligation on the note at the date of indorsement. It is manifest from these admissions that defendant and the witness were having controversy long before the credits were placed on said note by said witness. The witness admits that defendant was challenging the validity of the note—was stating that he only recognized an indebtedness on account to the Lexington News, and did not recognize the note. Such admissions, we conclude, give reason for inference that the payments made were not such as would toll the statute. It is true that much of plaintiff's testimony is to the effect that the payments were made by the defendant under recognition of the validity of the note and to be applied as payment on the note. The question arises as to whether or not such evidence upon the part of the witness can be considered as presenting an issue of fact for the jury.

As to the above question, we conclude that the testimony of the witness contains antagonistic statements of fact in which one class tends to sustain the allegations of the petition, and the other to disprove them. Such testimony, we conclude, fails to make out a submissible issue for the jury. As to those matters that contradict the admissions, the case stands as if the witness had not spoken. There is, therefore, a failure of proof as to the controverted question of the indorsements tolling the statute.

There is mention in the testimony of plaintiff's witness of letters written by defendant to the witness. None of these letters were directly placed in evidence and made exhibits. However, some letters written by defendant were read to the jury by plaintiff's witness, and under the rule in this State are to be considered as evidence.

From such letters as were read in evidence, we conclude that same cannot be concluded to rebut the admissions of plaintiff's witness to the effect that there was a controversy between plaintiff and defendant wherein defendant was contending that his obligation was on an account, and wherein defendant was denying obligation on the note in issue.

Judgment reversed and cause remanded with instructions that judgment be had and entered for defendant. All concur.