**BOYER LUMBER, INC., Plaintiff-Respondent,**

v.

**Lawrence E. BLAIR et al., Defendants-Appellants,**

**Vernon Hamby et al., Defendants,**

**Gary M. Busenbark, etc., et al., Defendants-Respondents.**

**No. 34945.**

Missouri Court of Appeals,
St. Louis District,
Division One.

April 9, 1974.

Motion for Rehearing or Transfer to Court En Banc or Transfer to Supreme Court Denied May 14, 1974.

Application to Transfer Denied July 22, 1974.

Bryan, Cave, McPheeters & McRoberts, Robert G. Brady, J. Roger Edgar, John J. Hennelly, Jr., St. Louis, for plaintiff-respondent.

Dearing, Richeson, Roberts & Wegman, Jack C. Stewart, Hillsboro, for defendants.

Robert L. Carr, Potosi, for Washington County Bank.

E. L. McClintock, Jr., Flat River, for Gary M. Busenbark.

SIMEONE, Judge.

This is an "equitable" mechanic's lien proceeding under §§ 429.270–429.340, RSMo., 1969, V.A.M.S., filed by plaintiff-respondent, Boyer Lumber, Inc. against (a) Mr. and Mrs. Lawrence E. Blair, the owners of certain real property in Washington County, (b) the cestui que trust of a deed of trust, (c) the trustee, (d) the general contractor employed to build a residence for the Blairs and (e) several other lien claimants who furnished materials for the construction of the residence. The trial court rendered judgment in favor of the lien claimants—Boyer Lumber, Gary M. Busenbark, d/b/a Busenbark Carpet Company and Roe Johnston, d/b/a Johnston Plumbing against the general contractor, Vernon Hamby, and imposed a lien upon certain proceeds of insurance which, by stipulation of the parties, represented the real estate of the Blairs upon which the liens were imposed.

It would serve no useful purpose to detail all of the complex, innumerable and minute facts of this proceeding. We shall state only those facts necessary for a determination of the issues presented. Basically, the facts which give rise to this dispute are the following. Mr. Lawrence Blair and his wife Mary Ann purchased a parcel of real estate in Washington County sometime in 1968. They decided to build a six-room residence thereon. They dealt with a general contractor, Vernon Hamby, who subsequently became bankrupt. In November, 1968, Hamby poured "footing" for the residence. Finally, Mr. and Mrs. Blair decided to proceed with the construction of the residence and on February 14, 1969 entered into an "agreement" with Hamby which provided that Hamby would "build" a house for $17,395.00. All of the materials, save carpeting, plumbing and brick [1] were furnished by Boyer Lumber, whose vice president is Richard Boyer.

---

1. Harold Reichert furnished brick—he is not a party to this appeal although he was a defendant in the equitable lien suit filed by Boyer. Roe Johnston who furnished plumbing and Busenbark who furnished carpeting are respondents on this appeal.

While the "footing" was poured in November, 1968, the construction of the residence "actually started in the spring"—March or April, 1969. On April 12, 1969, Mr. and Mrs. Blair executed a deed of trust to Robert L. Carr, trustee for the cestui que trust, the Washington County Commercial Bank, to secure a promissory note dated April 12, 1969 in the amount of $16,000.00. The deed was recorded on April 15, 1969.

By May 10, 1969, construction had proceeded to the extent that the exterior walls were up, the roof was on, the shingles on, the ceiling in, the exterior sheeting was on and the room partitions were in. On that date a tragic fire occurred in the attic of the house, next to the roof, which burned a hole in the roof and caused some other damage. Some paneling which had been delivered to the home site was stacked on the floors but none was, as yet, on the walls. Replacement costs, according to Mr. Boyer, on account of the fire, came to approximately $2,000.00. Some, probably all, of the stacked paneling, according to Mr. Blair, was burned.

All of the materials, lumber, etc. were furnished by Boyer Lumber. Mr. Boyer testified that his company furnished the lumber that was "used to form up the foundation work" and furnished lumber, paneling, plywood, sheet rock, plaster board, junction boxes, wire, nails, paint, etc.—all of which was used in the construction of the house between November, 1968 and August, 1969. His invoices, most of which were in his handwriting, totalled $12,334.95. He delivered "quite a bit" of the materials himself and "saw" other materials on the job. "The materials represented in these tickets were either delivered by me or I'd seen substantially that on the job site, correct." To his knowledge, the materials described for which he sought a lien were "incorporated into the [Blair] property." On cross-examination he admitted that he did not know "whether all the material delivered to the job site went into the house," but "I know the material was delivered to the job site, and that a house was erected." He was cross-examined concerning the claim for a great number of items such as tools, nails, paint, poles, paint rollers, brushes, knives, rakes, etc. which, according to him, were "used on the job."

By August, 1969, the residence was 99% complete.

One of the lien-claimants, Gary Busenbark, installed carpeting sometime in August, 1969. The value of such installation was $1,634.81. On November 7, 1969, he caused a notice of lien to be served on the Blairs and the cestui que trust and trustee.

Roe Johnston furnished materials and services in the amount of $321.81 in August, 1969. He caused a notice of lien to be served on October 28, 1969, upon the Blairs but no notice, according to the record was served upon the cestui or the trustee.

Prior to the filing of this "equitable" mechanics lien action by Boyer, Johnston had filed a mechanic's lien statement in the circuit court of Washington County. Busenbark had filed his statement in the circuit court, and Reichert filed his lien statement in the magistrate court which was removed to the circuit court.

At this stage of the narrative, Boyer Lumber, on May 5, 1970, filed its petition in equity "To Enforce Mechanic's Lien" after giving notice to the parties and after filing a "just and true account" of its demand. Named as defendants in the "equitable" suit were the Blairs, Hamby, Washington County Bank, Robert Carr, Harold Reichert, Gary Busenbark and Roe Johnston.

On May 29, 1970, Johnston filed a "Petition in Equity to Enforce Mechanic's Lien" stating that he had filed a mechanic's lien "but had not yet filed his petition to enforce same when the [Boyer] petition in equity . . . was filed. . . ." In his pleading he stated that Hamby was indebted to him in the sum of $321.81 and prayed judgment against Hamby and the Blairs in that amount. He also filed a separate answer to the Boyer petition.

On May 22, 1970, Busenbark filed a separate answer. In it he admitted paragraph 21 of the petition which alleged that Busenbark claimed to have a mechanic's lien in the amount of $1,671.07 and that he had filed an action to enforce the lien. Busenbark prayed that the "lien of Defendant Busenbark be declared to be a superior and paramount lien to that of plaintiff [Boyer]."

The Blairs also filed an answer to Boyer's and Johnston's petition, and a cross-claim against Hamby. Washington County Bank and Carr also filed a separate answer. Reichert did not plead to the petition.

Prior to trial which began on March 25, 1970, the attorneys for the parties engaged in a colloquy before the court. The attorney for Busenbark stated that it was his understanding, after an objection had been made to the propriety of his "pleading", that there was a "gentlemen's agreement" that all of the causes could be consolidated and that he had filed proper "pleadings" in the Boyer suit. It was, he said, his understanding that the consolidation made Busenbark's petition in his legal action a "pleading" to Boyer's equitable action. He objected "very strongly" to the suggestion raised by counsel for Boyer "raising technical questions concerning the pleadings." Counsel for Boyer, however, was "convinced that it is incumbent on a lien holder . . . to assert his claim by proper pleading to shoulder his own burden to conform with his own evidence and prove his case."

After the pre-trial discussion, trial commenced and the evidence was adduced.

The thrust of the Blair's defense was principally directed to the Boyer lien claim.

The thrust was that all of the material sold and delivered by Boyer could not reasonably have been used in the construction of the house, because the materials sold and delivered exceeded that which reasonably could have been used so that the material did not actually enter the home because some of the material had been carted away and used on other jobs, and because some of the materials were non-lienable items so that no "just and true account" was filed.

Mrs. Blair testified that after the fire Hamby's son drove away three or four loads of "stuff" in his pick-up, and Paul Essmyer, a carpenter employed by Hamby, stated that on one occasion after the fire he helped load 2 x 4's—2 x 12's onto a flat bed truck which materials he described as "new lumber."

One of the principal witnesses for the Blairs, Mr. William H. Bust, who was in the contracting business and who made an inspection of the house with a view towards "what's in it by way of material" concluded that the material sold exceeded what could reasonably have entered the home including 2 x 4's, 2 x 6's, 2 x 8's, 2 x 10's, 2 x 12's, plasterboard, plywood and certain other materials all amounting to approximately $3,000.00. Mr. Bust did not tear into the walls of the building and relied on some information furnished by the Blairs.[2] The total amount of the excesses was approximately $3,000.00.

After trial, lengthy briefs were filed, the cause was taken under advisement, and on June 13, 1972, the court rendered its judgment. The court found that the construction of the Blair property commenced on November 22, 1968 and that Boyer Lumber furnished materials up to and including August 26, 1969. The materials furnished were "used or consumed" in the construc-

2. Some of the excesses according to Mr. Bust were:

| | | |
|---|---|---|
| 1. 2 x 4's—4431 lineal feet | $531.72 |
| 2. 2 x 8's—416 lineal feet | 261.89 |
| 3. 2 x 10's—828 lineal feet | 268.27 |
| 4. 2 x 12's—24 lineal feet | 10.56 |
| 5. paneling—70 pieces | 733.95 |
| 6. ⅜ plywood—28 pieces | 214.20 |
| 7. sheet rock and plaster board 2472 sq. ft. | 173.04 |
| 8. ½" 4 x 8 plywood—2856 sq. ft. | 571.20 |
| 9. junction boxes and switch boxes 108 | 57.80 |

tion of the home, were delivered to the construction site and included "replacement of those damaged in the fire." The court found that Boyer substantially complied with the technical requirements of the mechanic's lien law to properly assert its claim in the amount of $12,334.95 which was not paid by Hamby.

The court also found that Johnston and Busenbark, but not Reichert, substantially complied with the technical requirements of the lien laws.

Therefore, the court adjudged that Boyer, Johnston and Busenbark recover $12,334.95, $321.81 and $1,634.41 respectively against Hamby and that the property of the Blairs be subject to a lien in those amounts.

Following post-trial motions in which it was pointed out that the Blair residence was, on October 12, 1971, "totally and completely" destroyed by another fire, and that $30,000 of insurance was deposited, the trial court, on September 26, 1972, vacated certain parts of the original judgment, upon stipulation of the parties, and ordered that $18,233.79 of the $30,000.00 be used to satisfy the liens, after payment of $12,000 to the Blairs and the Washington Bank. The court also decreed that the property be declared "to be free and clear and unencumbered by any claim of mechanic's lien. . . . "

Following this amended judgment the Blairs filed their timely appeal in this court.

Appellants-Blairs contend that the trial court erred (1) in allowing Johnston's claim of lien on the property or on the insurance proceeds because Johnston did not give notice of lien to the Washington County Bank nor to the trustee, the deed of trust having been recorded prior to the claim of lien; (2) in granting the Busenbark lien for carpeting because he failed to assert his claim of lien by way of "proper" pleadings in the "equitable" lien action

filed by Boyer, and (3) in adjudging a lien in favor of Boyer because (a) the evidence did not show that the material furnished "actually entered into the construction" of the Blair's home, (b) because the evidence showed that a "large" amount of the material was used on and became a structural part of other buildings which Hamby was working on, (c) because some of the material was only "personal property before it was incorporated into the Boyer [sic— Blair?] home," (d) the evidence showed that Boyer's lien statement contained "listed material far in excess of the amount that could have reasonably been used in the construction of the Blair home," (e) that Boyer's lien statement includes many nonlienable items, and (f) the evidence shows that Boyer's lien statement was not a "just and true account of the material going into the Blair home."

Respondent Boyer, on the other hand, urges that the evidence shows that the material sold and delivered "actually entered" into the construction of the Blair home and that the lien statement was in all respects a just and true account "within the meaning of § 429.020 [sic— § 429.080 RSMo.1969, V.A.M.S.]."

■ This is a court-tried case. In such situation it is our duty to review the case both upon the law and the evidence and reach our own independent judgment but we give due regard to the opportunity of the trial court to judge the credibility of the witnesses and defer to the court's findings upon controverted matters of fact. We are not to set aside the judgment unless it is "clearly erroneous." Rule 73.-01(d), V.A.M.R., § 510.310(4); Nelle Plumbing Company v. Stefanic, 453 S.W. 2d 636, 639–640 (Mo.App.1970).

I.

*Re Johnston's Lien* [3]

■ The Blairs contend that the court erred in allowing Johnston's lien because

3. Although Appellants-Blairs have claimed error in granting the Johnston lien, we have not been favored with a brief, suggestions or memorandum by Johnston. We are therefore

he did not notify the cestui que trust, Washington County Bank, or the trustee, Carr, of his intent to file a lien nor did he name the cestui or the trustee in the lien statement.

The record shows that as to Johnston's claim, the notice of the claim was addressed to "Lawrence E. Blair and Mary A. Blair," and that it was served on October 28, 1969.

§ 429.080 provides that "It shall be the duty of [persons seeking a lien] to file with the clerk . . . a just and true account of the demand due him . . . which is to be a lien upon such building . . . with the name of the owner or contractor, or both, if known. . . ." § 429.100 provides that every person who wishes to avail himself of the mechanics lien law shall give ten days' notice before filing the lien to the "owner". And § 429.-150 construes "owner" as including the "cestui que trust, for whose immediate use, enjoyment or benefit any building, erection or improvement shall be made. . . ."

In Nelle Plumbing Company v. Stefanic, supra, this court held that a lien was not established· because of the "failure of the plaintiff to name the cestui que trust (Gravois) in the lien statement." 453 S.W.2d at 641. See also H. B. Deal Const. Co. v. Labor Discount Center, Inc., 418 S.W.2d 940, 956 (Mo.1967), and Annot., 48 A.L.R. 3d 153, 204–205 (1973).

Under this record, we agree with appellant that the court erred in imposing a lien on the property and the insurance proceeds in favor of Johnston in the sum of $321.-81,[4] for the reason that the notice of lien, or for that matter, the lien statement, does not include the cestui que trust, Washington County Commercial Bank or the trustee.

Johnston did not perform his services until August, 1969 and did not file a notice until long after the deed of trust was executed and filed of record in April, 1969. We are compelled to hold that the notice and lien statement were insufficient.

II.

*Re Busenbark's Lien* [5]

█ The Blairs contend the court erred because Busenbark failed to assert his claim by way of "proper" pleadings. They contend that Busenbark's answer made no reference to his separate action at law to enforce his lien and having failed to assert his claim by pleading he is not entitled to a lien. We disagree. After Boyer's petition was filed, Busenbark on May 22, 1970 filed a separate answer in which he admitted that paragraph of the petition which alleged that Busenbark claimed to have a lien and he prayed that his [Busenbark's] lien be declared to be superior.

Under the equitable lien sections, 429.-270–429.340, the filing of an equitable lien action becomes the exclusive remedy. § 429.290. The other legal actions are stayed. § 429.300. By § 429.310, "Any answer, or other pleading, or motion . . . filed or made in any such equitable action by any mechanic's lien claimant, within six months after the preliminary statement for the lien of such claimant has been filed . . . or, when filed, or made, at the time required by law on a summons in such equitable action . . . shall be deemed a commencement of an action by such mechanic's lien claimant."

Despite any "gentlemen's agreement", we believe the answer filed by Busenbark was sufficient as a pleading to assert his claim, and was timely. Boyer's petition was filed

---

left to our own resources and research and must affirm or reverse as to Johnston without the benefit of his suggestions. It would be preferable and indeed helpful to have the benefit of counsel's thoughts.

4. This in no way affects the trial court's judgment in favor of Johnston v. Hamby.

5. As in the Johnston claim, we have not been favored with a brief or suggestions from the respondent-Busenbark although the Blairs claim error in granting his lien.

May 5, 1970 and the answer was filed on May 22, 1970. The answer referred to the petition and the language used in the answer and the reference to the petition could be reasonably construed as asserting his lien.

Peerless Supply Co. v. Industrial Plumb. & Heat. Co., 460 S.W.2d 651 (Mo.1970) relied on by the appellants is not dispositive of the issue here. That case held that a cross-claimant in an equitable action need not secure additional service of summons on the owner or contracting party unless new or additional relief was sought. See also Brown Supply Co. v. J. C. Penney Co., 505 S.W.2d 463 (Mo.App.1974).

Under all the circumstances we believe that Busenbark sufficiently asserted his claim by proper pleading. We rule this point against appellants.

### III.

#### Re Boyer Lumber Co. Lien

The Blairs contend that the court erred in adjudging a lien in favor of Boyer because the evidence did not show that the material sold and delivered actually entered into the construction of the Blair home, much of the material was used in other homes, a lien was given for nonlienable items and no just and true account was filed.

█ The general principle in Missouri is that in order for a materialman to have a mechanic's lien under our statutes upon a particular structure for materials, he is required to show that the materials "actually entered" or "went into" or were "used in" the construction of the building.[6] Tallman Co. v. Villmer, 133 S.W.2d 1085, 1087

(Mo.App.1939); Davidson v. Fisher, 258 S.W.2d 297, 301 (Mo.App.1953). At first there seemed to be no deviation from this principle. Simmons, Garth & Co. v. Carrier, 60 Mo. 581 (1875); Schulenburg v. Prairie Home Institute, 65 Mo. 295 (1877); Deardorff v. Everhartt, 74 Mo. 37 (1881) overruling Morrison v. Hancock, 40 Mo. 561 (1867); see the extensive history of the cases in Missouri in Annot., 39 A.L.R. 2d 394 at 440–441 (1955).

But this general principle has its nuances. In E. R. Darlington Lumber Co. v. Westlake Const. Co., 161 Mo.App. 723, 141 S.W. 931 (1911), where a lien was claimed for lumber used in constructing forms for concrete, this court laid down the following principle which has since been followed: "Where certain material is provided for by the contract in erection of a structure, and is furnished and used accordingly, and is, either in whole or in part, consumed in its use, the materialman is entitled to a lien for the material thus consumed in the erection of the structure to the extent of the consumption of its reasonable value, regardless of the fact whether or not such material formed a permanent part of the structure when completed. Consumption of value means the depreciation in the market value of the material by the use provided for by the contract." 141 S.W. at 933.[7] "It is sufficient that their [materials] use was necessary, and they were, in fact, used or consumed in the building." Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 841, 253 S.W.2d 824, 831 (1953).

And it has been held that testimony showing that materials were delivered, coupled with receipts of such materials, was sufficient to present a jury question of

---

6. "The general rule is that a materialman is entitled to a lien for materials sold upon the order of the original contractor, if it be shown that the materials so sold actually entered into the construction of a building." Tallman Co. v. Villmer, supra, 133 S.W. at 1087.

7. In Rapauno Chemical Company v. The G & N Ry. Co., 59 Mo.App. 6 at 12–13 (1894) it

was stated: ". . . [I]n order to maintain a lien for materials furnished, it is not necessary in all cases that such materials should *actually* have gone into the structure and formed part thereof. It is sufficient if their use was necessary, and they were in fact used or consumed in the improvement." See also cases collected in Annot., 3 A.L.R.3d 573 (1965).

showing that the materials went into a building. Stewart C. & M. Co. v. James H. Stanton Const. Co., 433 S.W.2d 76 (Mo.App.1968); Crane Co. v. Smith, 187 Mo.App. 259, 173 S.W. 691 (1915).

■ Tested by these legal principles and our mandate not to set aside the judgment of the trial court unless the judgment is clearly erroneous, we believe that the lien of Boyer should be affirmed. Despite the testimony of Mr. Bust and the Blairs' annex A and B showing allegedly that material used exceeded that which could have gone into construction of the residence, and the non-lienable items, Mr. Boyer testified in several instances that he delivered "quite a bit" of the materials himself, that the materials on the "original tickets" "went into" this home; that he saw the materials on the job; that the materials deposited were "delivered to the job site on or about the dates that are on each of the tickets" and significantly that the materials were *"incorporated into the property."* (Emphasis added.)

■ While he did candidly admit that he did not know whether "every piece" went into the house, it was not necessary to show that. It is not essential to show that "every stick" was put into the house. He was about the house two or three times a week. He delivered much of the material himself.[8]

■ The trial court was not clearly erroneous in its judgment establishing Boyer's lien despite the contention of the appellants-Blairs that the material exceeded the amounts that could have been used in the construction or the contention that some of the materials were used in other projects. It is unnecessary to detail each and every claimed excess. As to items in which there were major differences such as the 2 x 10's, there was evidence that 2 x 10's were used over the windows and doors.[9] As to the paneling, Mr. Boyer testified that there were about fifty pieces lying on the floor which were ruined in the fire and Mr. Blair testified that the paneling at the job site had "burned cor-

---

8. In E. R. Darlington Lumber Co. v. Harris, 107 Mo.App. 148, 80 S.W. 688 at 688 (1904) it is said: "[The contractor] swore he was about the house a great deal, but not constantly, while it was under construction; that he knew most of the lumber itemized . . . was used in the work, and to the best of his knowledge and belief all of it was. It is impossible, in cases of this kind, to prove . . that some one saw every stick of it put into the house. If such rigid proof was required, few liens could be enforced." See also Moon v. Brown, 172 Mo.App. 516, 158 S.W. 79 (1913).

9. The differences between Boyer's invoices and Mr. Bust's inspections showing some of the excesses are:

| Item | Bust's Estimate | Boyer's invoices | Comment |
|---|---|---|---|
| 2 x 4's | 4753 | 9138 | Major part of ceiling joists and rafters replaced |
| 2 x 6's | 8108 (acc. to TR. p. 215) | 8548 | Bracing |
| 2 x 8's | –0– (48?) | 464 (664?) | Lumber for forms |
| 2 x 10's | 48 | 876 | Mr. Essmyer testified used over windows and doors |
| 2 x 12's | 1448 | 1472 | — |
| Sheet Rock & Plaster Board | 4524 sq. ft. | 6996 (6340?) | fire and wastage |
| Paneling | 41 | 111 | 50 in fire and wastage |

ners on some of it. I don't know how much of it burned; probably all of it. . . ." Although the paneling which was burned was not incorporated into the house, it was nevertheless "consumed" in the sense of being used or depreciated before it could have been incorporated into the structure and we believe that in this posture it should be considered as a lienable item.

 As to the allegedly "nonlienable" items in appellants' Annex B ranging from rolls of tape, knives, sandpaper, two rakes, paint rollers, electric tape, paint brushes, etc., we believe that these materials are under these circumstances proper lienable items so as to come within the principles of Darlington Lumber Co., supra in that they were either consumed or used in the building or were so far depreciated in market value that they may legitimately be claimed as lienable items.

As to whether some of the material was carted away to other projects on which Hamby worked, in accordance with the evidence of Mrs. Blair and Mr. Essmyer, the trial court was at liberty to believe or disbelieve this evidence. H. B. McCray Lumber Co. v. Standard Const. Co., 285 S. W. 104 (Mo.App.1926)—"The court was at liberty to believe or disbelieve the evidence of the truckman that material was in fact removed from the premises." 285 S.W. at 107.

In reviewing the broad picture of this complex litigation and the evidence adduced at the trial where the court had the parties before it, we cannot say that the judgment of the trial court in imposing a lien of $12,334.95 for the materials furnished by Boyer was clearly erroneous. And neither do we find that the plaintiff-Boyer failed to file a just and true account of the materials furnished. Boyer in good faith sold and delivered the materials for use in the construction of the residence, and the materials either went into or were consumed or were depreciated in value.

The mechanics' lien statutes are to be liberally construed to permit mechanics and materialmen to satisfy their legitimate claims for improvements of the property of an owner. Sol Abrahams & Son Const. Co. v. Osterholm, 136 S.W.2d 86 (Mo. App.1940).

The judgment of the trial court is affirmed as to Boyer Lumber, Inc. The judgment of the trial court is affirmed as to Gary M. Busenbark, d/b/a Busenbark Carpet Company. The judgment of the trial court as to Roe Johnston, d/b/a Johnston Plumbing Co. is reversed.

DOWD, C. J., and KELLY, J., concur.