258 S.W.2d 297 (1953)
DAVIDSON
v.
FISHER et al.
No. 7159.
Springfield Court of Appeals. Missouri.
May 13, 1953.
*298 Edward F. Sharp, New Madrid, for appellant.
Blanton & Blanton, Bailey & Craig, Sikeston, Harry H. Bock, New Madrid, for respondents.
McDOWELL, Judge.
This is a mechanic's lien suit originating in New Madrid County, Missouri, by the filing of a petition in usual form, which sought to recover a judgment for $5,198.70, for lumber sold and delivered to defendant, Robert L. Fisher, and to establish a mechanic's lien on certain land and improvements thereon belonging to said Fisher, located in New Madrid County, Missouri.
The several defendants, other than Fisher, were claimants under deeds of trust, Circuit Court judgments and mechanic's liens against said property.
Separate answers were filed by defendants Tom S. Lee, trustee of the estate of defendant, Fisher, bankrupt; Harris N. Draughon and Harry C. Blanton; Virginia DeParamo and L. L. Jayne; Federal Materials Company; Keith Adcock and W. T. Nethery. The gist of these answers amounts to a general denial of plaintiff's cause of action; a denial that the amount sued for in plaintiff's petition constituted an account but that each sale was a separate transaction and a pleading of the statute of limitations. The defense that the checks, given in payment for each purchase of lumber, which have not been surrendered to the court, constituted payment and a bar to a materialman's lien.
We think it is unnecessary to set out all of the matters of defense pleaded in the answers for a proper decision of this case.
The evidence shows that R. L. Fisher, defendant, is the owner of the property with the improvements thereon in New Madrid County, Missouri (described in the petition) and, at the time of this suit, was in bankruptcy. J. P. Davidson is engaged in lumber business under the name of Davidson Lumber Company in Water Valley, Mississippi.
Mr. Davidson testified that prior to April 21, 1951, Fisher came to his room in the *299 Claridge Hotel, in Memphis, and wanted to buy lumber to repair his gin building, to build a new office, seed house, cotton house and some platforms, and stated that they agreed on the price of the lumber. He gave this testimony:
"* * * it was strictly a cash transaction and Mr. Fisher was supposed to pay for this and he was to send a check along with his drivers, but it was our understanding all of the way through that it was to be for those purposes, * * *"
The witness testified that before this conversation with Mr. Fisher, Fisher sent down and got some lumber and sent a check along to pay for the same; that at this time the witness was just out of the hospital when he made this deal. He stated he had to go back to the hospital and did not know when Fisher got the second load of lumber. He testified that the checks for the first lumber bounced but that his bank kept sending them back for payment and one time they were gone ten days and he thought they had been paid; that he did not know the first checks bounced at the time he furnished additional lumber. He testified as to invoices on five loads of lumber sold to Fisher in the total sum of $6,548.70. He stated the invoice of May 23rd was $1,555.04. He testified he had received payments on this invoice from Fisher in the amounts of $750 and $600, and that was all the payments ever made and the balance due was $5,198.70. The evidence seems to be undisputed that Fisher got the first two loads of lumber April 24th, the invoices having been made out April 21, 1951, for $806.77, and $852.02, and said amount was paid by check dated April 24, 1951, payable to Davidson Lumber Company and signed Farm Security Gin Company by R. L. Fisher. The next load of lumber was sold April 30, 1951, for $1,739.75 and paid by check. The next load of lumber was sold May 16, 1951, in the amount of $1,555.04, paid by check to Davidson Lumber Company, signed by R. L. Fisher and the last lumber was sold June 3, 1951, in the amount of $1,595.12, and, likewise, paid for by check.
Plaintiff gave this testimony on cross-examination:
"Q. Mr. Davidson, you say that when this transaction was entered into with Fisher that it was a cash transaction? A. We would consider it a cash transaction because a check with it we do no credit business.
"Q. You accepted a separate check every time Fisher or his man came down there? A. Yes, sir, they were suppose to send a check for the lumber."
The witness testified he didn't deliver the lumber personally; that on the last three trips he was back in the hospital. This witness admitted he did not know where the lumber went to after it was delivered to the trucks or how it was used. He stated he went to the Prosecuting Attorney to have Fisher prosecuted on these unpaid checks and followed the matter up to have him extradited from Missouri; that these prosecutions are still pending so far as he knows. He testified he was present at an extradition proceeding before Governor Smith in Jefferson City and was asked about a statement made by Fisher relative to the use of the lumber sold him by plaintiff but the court refused to let him testify, holding such statement to be hearsay.
The original mechanic's lien, filed in the office of the Circuit Clerk, was offered and admitted without objection, except on the part of the lien holders that the items sued on were barred by the statute of limitations and by the mortgagee lien holders that where material is used for repair, the lien is inferior to that of the mortgage.
The checks were introduced in evidence without objection.
We think from the evidence that there is sufficient proof to show that the lumber represented by the checks in evidence was delivered to the trucks owned by Fisher in the State of Mississippi.
J. W. Hunt, an employee of the Davidson Lumber Company, who delivered the lumber to the trucks testified as follows:
"Q. You don't know of your own knowledge, personal knowledge, what Fisher may have done with this lumber you and Mr. Davidson sold him? A. Not positive, no, sir."
*300 R. H. Jones testified that he had formerly been the sheriff and tax collector in his County in Mississippi; that he was present in Jefferson City when R. L. Fisher testified at an extradition hearing and heard Fisher testify relative to the lumber sold him by plaintiff. He gave this answer:
"A. He said he used it, used the lumber in repairing a part of his gin, I believe, caused by fire, the damage was, and possibly building another shed and cotton house and used it in the installations around the gin except a few boards taken to his farm to repair some houses and I just can't remember seems like he had lost a little less than a thousand feet but the principle part of it was used in his gin installations."
He testified this statement was made in the extradition proceedings against defendant, Fisher, and that the Governor denied the extradition. He gave this testimony:
"Q. You don't know whether any of the lumber went into the gin property? A. Nothing about the gin or lumber business.
"Q. Or what Fisher actually did with the lumber? A. I never heard of him until this came up."
R. L. Fisher, defendant, was offered in evidence by plaintiff and, on direct examination, refused to testify because of his constitutional rights. On cross-examination he stated that there were four different buildings on the land in question, the office, cotton house, seed house and gin house; that the buildings on the property there now were originally constructed in 1949. This was all of plaintiff's testimony.
The defendant, Harris Draughon, offered in evidence the original deed of trust, acknowledged June 6, 1948, and recorded June 7, 1948, in the deed records of New Madrid County, and in connection therewith, an original judgment rendered in the Circuit Court of New Madrid County, March 7, 1950, on the first count of $5,655, and second count $6,460.66, drawing eight per cent interest.
In behalf of defendants, Mrs. DeParamo and Jayne, a deed of trust, dated May 24, 1948, assigned to them from the Bank of New Madrid, in the sum of $7,116.00 balance due, was offered and a deed of trust against said property held by defendants L. L. Jayne and Virginia DeParamo, having a balance due of $3,150.00.
Defendant, Nethery, offered in evidence a judgment against defendant, R. L. Fisher, rendered in the Circuit Court of New Madrid County, Missouri, dated March 14, 1950, which is for $1,627.50.
At the close of all the testimony defendants, Harris Draughon and Federal Materials Company, moved to dismiss that portion of plaintiff's claim which asked for a mechanic's lien. Same motion was made on the part of other defendants.
The trial court, at the close of all the evidence, rendered the following judgment, August 22, 1952:
"* * * that the defendant, R. L. Fisher, was indebted to the plaintiff in the sum of $5198.70, with interest at the rate of 6% per annum from June 6, 1951, and for his costs in this proceeding, and the Court doth further find that the plaintiff is not entitled to a special lien upon any of the improvements erected upon the property of the defendant, R. L. Fisher, described in the petition herein."
In this opinion we will refer to the appellant as plaintiff and to the respondents as defendants.
This is an action at law and the appellate court will review non-jury cases as suits in equity and will give due regard to the trial court's opportunity to judge of the credibility of witnesses and will not set aside trial court's judgment unless it is clearly erroneous, but the appellate court will make independent findings of fact and reach its own conclusions on weight of evidence. Section 510.310 RSMo 1949, V.A.M. S.; Faire v. Burke, Mo.Sup., 252 S.W.2d 289.
Plaintiff's first assignment of error reads as follows:
"Plaintiff furnished the material for the buildings erected upon the property at the request of the owner and is entitled to a lien therefore."
*301 Under this assignment of error, plaintiff cites Sections 429.010, 429.030 and 429.040 RSMo 1949, V.A.M.S.
The right of plaintiff to establish a materialman's lien is purely statutory. All of the law covering his rights is set out in Chapter 429 RSMo 1949, V.A.M.S. Section 429.010 provides that every person who shall furnish material for any building erections or improvements upon land, or for the repairing of the same, under or by virtue of sections 429.010 to 429.340 shall have a lien upon the building or improvements and upon the land belonging to such owner where the same are situated to the extent of one acre.
Section 429.030 provides that this lien shall be valid only to the extent of the interest of the owner of such property in the premises.
Section 429.040 merely holds that where there is more than one building on the property it shall not be necessary to file a separate lien upon each building.
The serious question involved is the sufficiency of the evidence to establish plaintiff's claim for a materialman's lien.
We think the law is properly declared in Tallman Co. v. Villmer, Mo.App., 133 S.W.2d 1085, 1087, as follows:
"The general rule is that a materialman is entitled to a lien for materials sold upon the order of the original contractor, if it be shown that the materials so sold actually entered into the construction of a building.
"In Schulenberg v. Prairie Home Institute, 65 Mo. 295, the court held that a materialman has no lien upon any building `save for such materials as actually enter into its construction.'
"In State v. Gregory, 170 Mo. 598, 604, 71 S.W. 170, the court held that, while our laws give a materialman a lien for materials furnished for the erection of a building or improvement, a lien is not allowed for materials furnished to a contractor to go into a building but which were not actually put into it by him. The same principle has been stated and applied in United States Water Co. v. Sunny Slope Realty Co., 152 Mo.App. 300, 133 S.W. 371, and in the comparatively late case of St. Louis Concrete Products Mfg. Co. v. Walker, Mo.App., 64 S.W.2d 131, 132. * * *"
In Better Roofing Materials Co. v. Sztukouski, Mo.App., 183 S.W.2d 400, 402, the court states the law:
"It is the established rule that the statutes giving liens for materials used for making improvements upon land which extend to the improvements themselves, and the land upon which they are made, are remedial in their nature and should be given a liberal construction so as to carry out their just and beneficent objects. * * *
"The evidence conclusively shows that plaintiff supplied to the contactor, Roberts, the materials set forth in the lien account and that said materials actually went into the making of the improvement on the property. * * *"
In La Crosse Lumber Co. v. Goddard, Mo.App., 151 S.W.2d 455, 456, the following law is stated:
"The plaintiff argues in its brief that the mechanic's lien statute, * * * should receive a liberal construction and cites cases to support that proposition. That is true, but this court, in the name of liberality, cannot overthrow the findings of the trial court on conflicting evidence."
In determining the sufficiency of the evidence to sustain a materialman's lien in behalf of plaintiff in this case, we find that the trial court was justified in refusing the lien because there was not sufficient evidence to establish the same.
In a suit to foreclose mechanics' lien whether material sold by materialman entered into construction of owner's dwelling was a question of fact. Tallman Co. v. Villmer, supra.
Plaintiff's evidence shows that the lumber in question was sold and delivered to the defendant, Fisher, or to his agents, but it wholly fails to show that the materials sold and delivered, as set forth in the lien account *302 in plaintiff's petition, actually went into the making of the improvement or improvements on said property.
The only testimony that could possibly support plaintiff's contention for a lien on the property in question was that of plaintiff's witness who attended an extradition hearing in Jefferson City and testified that he heard Fisher make a statement in that trial that the lumber purchased or a part thereof, went into repairs of the gin building or possibly the building of other buildings on the land, but he specifically states that, in this statement, a part of the lumber was used in repairing houses out on defendant's farm and a part of the lumber was lost. The trial court would have had to guess at how much lumber, if any, was used by Fisher in improving his buildings on the land in question and, under the law, he is not permitted to guess and was clearly justified in his judgment and finding disallowing the lien.
Under point V in plaintiff's brief, he contends that the admissions made by Fisher in an extradition hearing at Jefferson City that lumber bought from plaintiff was used in the construction of the gin buildings, was admissible as statement made against interest.
In Reiling v. Russell, 345 Mo. 517, 134 S.W.2d 33, 36, cited by plaintiff, the court states the law thus:
"* * * Thus where in another suit, involving similar issues, one of the parties, who is also a party to the subsequent litigation, has been guilty of fraudulent conduct from which can be logically inferred his belief in the existence or nonexistence of some fact in issue in the second suit, such fraudulent conduct in the course of the former litigation may be admitted in evidence against him. * * *"
We have held that the evidence offered as to the admission of defendant, Fisher, at the trial in Jefferson City on an extradition hearing, was not sufficient to make a case for plaintiff but we now, in view of the authorities and law cited by plaintiff, hold that this testimony was inadmissible. The only issue that could have been involved in the extradition proceeding in Jefferson City was whether or not the checks given, which were not paid by the bank, were fraudulent. It did not involve the question of the use of the lumber, a fact in issue in this suit. This holding is in full accord with all the other authorities cited by plaintiff on this point.
Plaintiff cites Concrete Steel Co. v. Reinforced Concrete Co., Mo.App., 72 S.W.2d 118, to support his contention that the admission of defendant, Fisher, was admissible. The case is no authority, whatsoever, for plaintiff's contention. In the case cited, plaintiff was suing on an account and offered in evidence two letters written by the defendant, which contained admissions against interest. These letters were the sole evidence in the case. In one letter, defendant purported to set out in detail the state of the account between himself and plaintiff and had with it separate itemized statements of the total debits of plaintiff to the defendant. Of course, such admissions against interest would be admissible. In the case at bar how different? Here the defendants were not present, had no interest in a hearing which had nothing whatever to do with the establishing of indebtedness against the property in question and the issues involved were not necessary issues to be shown in the case at bar. In the case cited by plaintiff, above, the defendant was a party to the suit. The letters were about the subject matter and were the acts of defendant.
Under plaintiff's second point, he states:
"Plaintiff's lien is superior to that of any prior mortgage or deed of trust on the property involved so far as the buildings are involved."
It is unnecessary for us to pass upon this issue but we will state our conclusions as to the merits of this contention under the law.
In Masterson v. Roberts, 336 Mo. 158, 78 S.W.2d 856, 861, 97 A.L.R. 862, the law is properly stated:
"`The true construction to put on section 6707, Rev.St.1889 (mortgaged lands section), is that if there is a mortgage on the land, and a contractor, under *303 contract with the owner of the equity of redemption, builds a new house upon the land, he has a mechanic's lien against the house, and the house may be sold, and may be removed from the land by the purchaser; for this preserves to the mortgagee all the security he formerly had, and secures, as far as possible, the payment to the contractor for the work and materials he used in building the house. * * * (It) does not authorize the mechanic's lien to take priority over the mortgage, or the lienholder to sell the reconstructed house and have it removed. It may be that the reconstruction of the house would increase the security of the mortgagee. But he is not bound to rebuild the house. He may be content with his security of the land and the ruins of the house. * * * "Under a different rule it would be in the power of the mortgagor to destroy the security by erecting costly improvements, the expense of which the estate improved could not be able to pay." * * *'"
This same case holds that where a building had been partially burned and the holder of the equity of redemption seeks to have it repaired, the holder of the mortgage has a right to rely upon the fact that whoever furnishes materials or does work thereon, only relies for his security upon the equity of redemption.
Plaintiff cites Gold Lumber Co. v. Baker, 225 Mo.App. 849, 36 S.W.2d 130, 132, to support his contention above. This case relates to the erection of a new building and follows the law as we have set out herein.
Of course, if property is mortgaged and later a new house is erected thereon, the materialman's lien would take precedent over the mortgage but the evidence in plaintiff's case wholly fails to show that any new buildings were erected upon this property and the only evidence that in any way shows what was done with the lumber sold, was the attempted showing of an admission of Fisher and the witness said that the greater part of the lumber was used in repairing the gin. There is no merit whatever in plaintiff's second contention.
Plaintiff's third contention we need not pass on.
The sixth assignment of error on the part of plaintiff is:
"Plaintiff did not lose or waive his lien by taking the checks which were returned unpaid."
He cites 57 C.J.S., Mechanics' Liens, § 226, page 800. The law is stated as follows:
"A claimant does not lose his right to a mechanic's lien by taking a bill, draft, or order, even though it is accepted and partial payment made thereon, unless there is an express agreement that the lien shall be waived or the draft or order was expressly received as payment. Also the lien is not waived or lost by the negotiation of a draft."
In Cleary v. Siemers-Marshall Electric Co., Mo.App., 296 S.W. 448, 451, the law is stated:
"The acceptance by plaintiff of the three trade acceptances, which were not paid when due, and the check, which was not paid when presented, does not waive the lien since the acceptances were payable before suit to perfect lien was required to be filed, and the acceptances, together with the check, were tendered back at the trial. * * *"
The evidence certainly showed that the checks were not paid but it does not show that they were turned back at the trial. It was the duty of plaintiff to surrender these checks at the trial in order to secure a materialman's lien. The evidence does not show that this was done and, as to whether or not the checks were surrendered at the trial, was a question of fact for the trial court to pass on.
Under point VII, that plaintiff's suit was brought to enforce a lien against holders of deeds of trust and that some other claim lien holders were added and were proper parties, we agree with.
*304 The issue as to whether or not the lumber in question was purchased under a continuing contract or under different and separate contracts is important only as to whether or not a part of the items sued for and claimed as a lien against the property in question, was barred by the statute of limitations. Plaintiff did testify that he had a conversation, at the hotel in Memphis, with Fisher, about the sale of the lumber and the price. We think the court would be justified in finding that Fisher was merely inquiring of the prices of lumber and as to whether or not plaintiff could furnish him the kind he wanted and that there was no intention, at that time, to contract but that each transaction was a separate and distinct sale and was to be paid for in cash; that on each sale a cause of action arose and, in fact, a separate crime was committed by the giving of a worthless check, and, we cannot agree with plaintiff that this was one continuing contract or sale but we hold that each sale was a separate and distinct transaction; that the statute of limitations would apply to each transaction which was not filed within four months from the date thereof as required by the statute. Section 429.080, RSMo 1949, V.A.M.S.
The evidence in this case fails to show that the lumber sold and delivered to Fisher, the owner of the land in question, was used in the repairing of the buildings on said land or in the erection of new buildings. In fact, the evidence fails to show that any new buildings were ever erected on the premises described in the petition or that any repairs were made thereon.
As to whether or not the lumber or materials sued for, by plaintiff in his action herein, were used in the repairing or the erection of new buildings was a question of fact. The trial court was justified in finding against plaintiff as to a materialman's lien.
Under the evidence in the case, the defendants holding deeds of trust, certainly, would have superior liens to plaintiff's claimed lien because, if there is any testimony in this case entitling plaintiff to a mechanic's lien, such testimony would be that whatever material furnished by plaintiff was used for the purpose of repairing buildings already on the property.
The judgment of the trial court is affirmed.
VANDEVENTER, P. J., and BLAIR, J., concur.